**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 15-cv-00965-RM

MANUEL OLMOS,

      Petitioner,

v.

JEH JOHNSON,
SARAH SALDANA,
THOMAS HOMAN,
JOHN P. LONGSHORE,
HOMERO MENDOZA,
JOHNNY CHOATE, and
LORETTA E. LYNCH,

      Respondents.

---

**ORDER**

---

    This matter is before the Court on Petitioner Manuel Olmos's ("Olmos" or "Petitioner")

petition ("Second Petition") for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  (ECF No.

1.)

    For the below stated reasons, the Court DENIES and DISMISSES Petitioner's Second

Petition.

**I.    BACKGROUND**

    Petitioner is a citizen and national of Mexico who has lived continuously in the United

States for over twenty (20) years.  (ECF No. 1-3, Olmos Decl. ¶¶ 1-2.)  Petitioner last entered the

United States near Laredo, Texas, in 1995.  (ECF No. 1-5 at 2, Miriam Azhar ("Azhar") Decl.,

Ex. A.)  In 2011, Petitioner came to the attention of Immigration and Customs Enforcement ("ICE") when he was arrested for driving under restraint.  (ECF No. 1-3, Olmos Decl. ¶ 7.)  At that time, Petitioner was also subject to pending state criminal charges for forgery of a government document.  (ECF No. 1-5 at 3, Azhar Decl., Ex. A.)  A detainer was lodged against Petitioner and he was eventually transferred to ICE's custody.  (ECF No. 1-5 at 6, Azhar Decl., Ex. B)

Under 8 U.S.C. § 1182(a)(6)(A)(i), ICE charged Petitioner as being present in the United States without being lawfully admitted.  (ECF No. 1-5 at 8, Azhar Decl., Ex. C.)  Nonetheless, ICE released Petitioner on a $10,000 bond and enrolled him in the alternatives to detention ("ATD") program.  (ECF No. 1-5 at 6, 11, Azhar Decl., Exs. B, D.)  Under the ATD program, Petitioner had to wear an ankle monitor and report to ICE on a biweekly basis.  (ECF No. 1-3, Olmos Decl. ¶ 7.)

In December 2012, Petitioner pled guilty to forgery of a government document and his sentencing was set for April 19, 2013.  (ECF No. 1-5 at 13-15, Azhar Decl., Ex. E.)  Later in December 2012, Petitioner was arrested for two additional felonies:  identification theft and providing false information to a pawnbroker.  (ECF No. 1-5 at 17-20, Azhar Decl., Ex. F.)  Petitioner was released on a $6,000 criminal bond.  (ECF No. 1-5 at 22-23, Azhar Decl., Ex. F.)  On April 19, 2013, Petitioner pled guilty to the identify theft and false information charges.  (ECF No. 1-5 at 17-18, Azhar Decl., Ex. F.)  Also on that date, Petitioner was sentenced to three years of probation for all three state offense convictions.  (ECF No. 1-5 at 17-18, Azhar Decl., Ex. F.)

Six days later, on April 25, 2013, Petitioner reported to ICE as part of his regular biweekly check-ins as required under the ATD program.  (ECF No. 1-3, Olmos Decl. ¶ 9.)  ICE ran a routine record check and concluded that Petitioner had now been convicted of two crimes of moral turpitude.  (ECF No. 1-5 at 6, Azhar Decl., Ex. B.)  ICE determined that Petitioner was subject to mandatory detention under 8 U.S.C. § 1226(c) and revoked his bond.  (ECF No. 1-3, Olmos Decl. ¶¶ 10-11.)  By way of an Immigration Judge ("IJ"), Petitioner sought review of ICE's determination.  (ECF No. 1-5 at 25, Azhar Decl., Ex. G.)  Applying Board of Immigration Appeals ("BIA") precedent, on June 13, 2013, the IJ found Petitioner subject to mandatory detention.   (ECF No. 1-5 at 25, Azhar Decl., Ex. G.)

On November 20, 2013, Petitioner filed a *pro se* habeas petition ("First Petition") challenging his mandatory detention under 8 U.S.C. § 1226(c).  (ECF No. 1, *Olmos v. Holder*, Case No. 13-CV-3158-RM-KMT, 2014 WL 222343 (D. Colo. Nov. 20, 2013).)  In his First Petition, Petitioner agued in pertinent part, *inter alia*, that he was "entitled to a bond hearing, where he could seek release while his removal hearing was pending."  *Olmos v. Holder*, 780 F.3d 1313, 1316 (10th Cir. 2015).  Specifically, Petitioner argued that Section 1226(c) did not authorize his detention because ICE had failed to take him into immigration custody immediately after his release from criminal custody.  (ECF No. 1 at 10-11, *Olmos v. Holder*, Case No. 13-CV-3158-RM-KMT, 2014 WL 222343 (D. Colo. Nov. 20, 2013).)  On January 9, 2014, the Court held a hearing on Petitioner's First Petition, where he reiterated his arguments for release, and asserted that he was not subject to mandatory detention because he "ha[s]n't really spent time in jail."  (ECF No. 16 at 54 in *Olmos v. Holder*, Case No. 13-CV-3158-RM-KMT, 2014 WL 222343 (D. Colo. Jan. 15, 2014).)  The Court orally granted Petitioner's First Petition and

3

ordered that the government provide Petitioner with a bond hearing within ten days.  (ECF No. 16 at 59 in *Olmos v. Holder*, Case No. 13-CV-3158-RM-KMT, 2014 WL 222343 (D. Colo. Jan. 15, 2014).)  Subsequent to the Court's granting Petitioner's First Petition, an IJ granted Petitioner's release on $12,000 bond which Petitioner paid.  (ECF No. 1-3, Olmos Decl. ¶ 17.)  ICE released Petitioner in January 2014.  (ECF No. 1-3, Olmos Decl. ¶ 17.)  On January 17, 2014, the Court issued an opinion explaining its decision to grant Petitioner's First Petition.  The Court held that the plain meaning of Section 1226(c) means "that aliens not taken into custody by ICE and detained 'when . . . released' from custody for the qualifying criminal charge are entitled to a bond hearing.'"  *Olmos v. Holder*, Case No. 13-CV-3158-RM-KMT, 2014 WL 222343, *6 (D. Colo. Jan. 17, 2014), *rev'd by* 780 F.3d 1313 (10th Cir. 2015).  The Court further found if ICE fails to take a noncitizen into custody "immediately and continuously" after the noncitizen's release, then ICE still has power to detain the noncitizen but that the individual is entitled a bond hearing conducted by an immigration judge pursuant to Section 1226(a).  *Id*. at *4.

With respect to the First Petition, the government appealed the Court's granting of habeas relief to the Tenth Circuit Court of Appeals.  (ECF No. 22, *Olmos v. Holder*, Case No. 13-CV-3158-RM-KMT, 2014 WL 222343 (D. Colo. Mar. 6, 2014).)  The Tenth Circuit reversed the Court's granting of habeas relief with respect to the First Petition.  *Olmos v. Holder*, 780 F.3d 1313, 1327 (10th Cir. 2015).  Even though Petitioner had experienced a gap between his criminal custody, conviction, and immigration custody, the Tenth Circuit held that Petitioner was subject to mandatory detention.  *Id*. at 1324.  The Tenth Circuit held that *In re Rojas*, 23 I. & N. Dec. 117, 125 (B.I.A. 2001) was entitled to *Chevron* deference, *Olmos*, 780 F.3d at 1324, and that

Section 1226(c)'s "statutory command did not vanish as a result of the Attorney General's delay" in detaining Petitioner, *id*. at 1326.  Further, the Tenth Circuit found that Petitioner forfeited his argument that Section "1226(c) applies only to someone who has already been subject to incarceration as part of a criminal sentence." *Id*. at 1326-27.  On May 18, 2015, the Tenth Circuit's issued its mandate with respect to the First Petition.  (ECF No. 32, *Olmos v. Holder*, Case No. 13-CV-3158-RM-KMT, 2014 WL 222343 (D. Colo. May 18, 2015).)  On June 2, 2015, the Court denied Petitioner's First Petition, vacated certain of its prior orders, and voided the bond order issued by the Immigration Court.  (ECF No. 38, *Olmos v. Holder*, Case No. 13-CV-3158-RM-KMT, 2014 WL 222343 (D. Colo. June 2, 2015).)

On May 6, 2015, Petitioner filed his Second Petition for writ of habeas corpus.  (ECF No. 1.)  Petitioner argues that he was not "'released' as the [mandatory detention statute's, 8 U.S.C. § 1226(c),] effective date clause defines this term."  (ECF No. 1-1 at 2.)  On May 13, 2015, Petitioner filed for a temporary restraining order ("TRO") enjoining Respondents from taking him into immigration custody under the mandatory detention statute, 8 U.S.C. § 1226(c), until his Second Petition is resolved.  (ECF No. 16.)  On May 15, 2015, the Court held a hearing on Petitioner's motion for a TRO.  (ECF No. 24.)  The Court orally denied Petitioner's motion for a TRO.  (ECF No. 24.)  At the time of the hearing on Petitioner's motion for a TRO, Petitioner was living at his home in Aurora, Colorado.  (ECF No. 1-3, Olmos Decl., ¶ 17.)  Petitioner's next immigration court hearing was/is scheduled for August 2015.  (ECF No. 1-3, Olmos. Decl., ¶ 18.)  At this time, it is unclear to the Court whether Petitioner remains not in physical custody on the now voided bond or is in ICE's physical custody.  (*See generally* Dkt.)

Respondents oppose the Second Petition on three bases.  First, Respondents argue that the Second Petition is subject to dismissal under 28 U.S.C. § 2244(a) and the related doctrine of abuse of the writ.  (ECF No. 25 at 9-16.)  Second, Respondents argue that Petitioner's argument contradicts BIA decisions to which the Court should defer under *Chevron*.  (ECF No. 25 at 16-23.)  Third, based upon the Tenth Circuit's holding with respect to the First Petition, Respondents argue that mandatory immigration detention applies when an alien is first released from arrest and only later convicted of a removable offense.  (ECF No. 25 at 23-24.)

## II.   LEGAL BACKGROUND

### A.   Subject Matter Jurisdiction

The Court has subject matter jurisdiction under § 2241 because Petitioner was/is detained within its jurisdiction in ICE custody.  "[F]or core habeas petitions challenging present physical confinement, jurisdiction lies only in one district: the district of confinement." *Rumsfeld v. Padilla,* 542 U.S. 426, 443 (2004); *see also United States v. Scott,* 803 F.2d 1095, 1096 (10th Cir. 1986) (holding that "[a] § 2241 petition for a writ of habeas corpus must be addressed to the federal district court in the district where the prisoner is confined") (citation omitted).

### B.   Statutory Background

As the Tenth Circuit has articulated

[f]or aliens, a criminal conviction can often result in removal (deportation).  When an alien is convicted and the federal government seeks removal, an immigration judge can ordinarily conduct a bond hearing to decide whether the alien should be released or detained while he waits for his removal hearing.  But, in 8 U.S.C. § 1226(c), Congress has required detention (without a bond hearing) for some categories of aliens.  These aliens must be taken into custody by the United States Attorney General when they are released in their criminal cases.

*Olmos*, 780 F.3d at 1316. The Immigration and Nationality Act ("INA") authorizes the Attorney

General to arrest, detain, and release aliens pending their removal proceedings upon an

individualized assessment for bond or other forms of supervised release. *See* 8 U.S.C. § 1226(a).

But the mandatory detention statute, 8 U.S.C. § 1226(c), provides that the Attorney General

"shall take into custody any alien who" is deportable or inadmissible "when the alien is released"

because he committed certain crimes; and, that the Attorney General "may release" an alien who

is subject to detention under this statute only in limited circumstances not at issue in this matter.

8 U.S.C. § 1226(c)(1)-(2).

Section 1226(c) provides:

(c)  Detention of criminal aliens
    (1)  Custody
    The Attorney General shall take into custody any alien who –
        (A) is inadmissible by reason of having committed any offense
covered in section 1182(a)(2) of this title,
        (B) is deportable by reason of having committed any offense
covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
        (C) is deportable under section 1227(a)(2)(A)(i) of this title on the
basis of an offense for which the alien has been sentence [sic] to a term of
imprisonment of at least 1 year, or
        (D) is inadmissible under section 1182(a)(3)(B) of this title or
deportable under section 1227(a)(4)(B) of this title,
        when the alien is released, without regard to whether the alien is
released on parole, supervised release, or probation, and without regard to
whether the alien may be arrested or imprisoned gain for the same offense.
    (2) Release
    The Attorney General may release an alien described in paragraph (1) only
if the Attorney General decides pursuant to section 3521 of Title 18 that release of
the alien from custody is necessary to provide protection to a witness, a potential
witness, a person cooperating with an investigation into major criminal activity,
or an immediate family member or close associate of a witness, potential witness,
or person cooperating with such an investigation, and the alien satisfies the
Attorney General that the alien will not pose a danger to the safety of other
persons or of property and is likely to appear for any scheduled proceeding. A
decision relating to such release shall take place in accordance with a procedure
that considers the severity of the offense committed by the alien.

8 U.S.C. § 1226(c) (2015).

## III.  ANALYSIS

### A.  Whether Petitioner is Abusing the Writ

Respondents argue that the Court should dismiss the Second Petition because it is barred by 28 U.S.C. § 2244(a) and the doctrine of abuse of the writ. For the following reasons, the Court agrees with Respondents' argument and dismisses the Second Petition because it is an abuse of the writ.

Under 28 U.S.C. § 2244(a), the Court is not required "to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus, except as provided in section 2255."[1] This statutory bar applies both to successive claims that actually were raised in a prior petition and to claims that could have been raised in a prior petition but were not. *See Stanko v. Davis*, 617 F.3d 1262, 1270 (10th Cir. 2010). Section 2244(a)'s second bar arises from the doctrine of abuse of the writ. *Stanko*, 617 F.3d at 1269-70. The abuse of the writ doctrine prohibits a petitioner from raising a claim in a subsequent habeas petition when no objective factor external to the petitioner's claim impeded his efforts to raise the claim in an earlier petition. *Stanko*, 617 F.3d at 1272 (citing *McCleskey v. Zant*, 499 U.S. 467, 493 (1991)). "Under the abuse of the writ doctrine, if a second or subsequent petition raises a claim that could

---

[1] Petitioner argues that Section 2244(a) is inapplicable to him because he is not in custody pursuant to a judgement of a court of the United States. (*See* ECF No. 26 at 6 n.4.) Because the Tenth Circuit's mandate issued, the Court subsequently voided Petitioner's bond as issued by the immigration court (as requested by Petitioner), and denied Petitioner's First Petition, the Court entered judgment regarding the legality of Petitioner's detention (or impending detention). (*See* ECF Nos. 32; 36 at 2; 38; 39, *Olmos v. Holder*, Case No. 13-CV-3158-RM-KMT, 2014 WL 222343 (D. Colo. June 2, 2015).)

have been raised in an earlier petition, the petitioner must establish that the omission was not the result of inexcusable neglect in order to proceed on the new claim." *Id.* at 1271 (citation omitted).  "Absent such a showing, a court may not hear the claim unless the petitioner shows that the case implicates a fundamental miscarriage of justice." *George v. Perrill*, 62 F.3d 333, 335 (10th Cir. 1995) (citing *McCleskey*, 499 U.S. at 494-95), *superseded by statute on other grounds as stated in Ackerman v. Novak*, 483 F.3d 647, 649-50 (10th Cir. 2007); *see also Stanko*, 617 F.3d at 1271 (holding that to demonstrate an omission was not the result of inexcusable neglect, petitioner must show either cause and prejudice or that a failure to consider the claim will result in a fundamental miscarriage of justice) (citation omitted).

"[I]n abuse of writ cases, the cause and prejudice standard applies to pro se petitioners just as it applies to petitioners represented by counsel." *Rodriguez v. Maynard*, 948 F.2d 684, 687 (10th Cir. 1991).

### 1.   No Objective, Extrinsic Factor Prevented Petitioner From Raising His New Claim

"'[T]he cause standard requires the petitioner to show that some objective factor external to the defense impeded [the petitioner's] efforts to raise the claim' in the earlier petition." *Stanko*, 617 F.3d at 1272 (alterations in original) (quoting *McCleskey*, 499 U.S. at 493).  "Cause also requires that a prisoner 'conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief in the first federal habeas petition.'" *Id.* (quoting *McCleskey*, 499 U.S. at 498).

In this matter, no objective, external factor impeded Petitioner from raising his new claim, *i.e.*, that he is not subject to mandatory detention because he never served a term of incarceration, in his First Petition.  The Tenth Circuit held that Petitioner failed to include this

claim in his First Petition.  *Olmos*, 780 F.3d at 1326-27.  The Court must adhere to the Tenth

Circuit's holding.  *See United States v. Spedalieri*, 910 F.2d 707, 709, 709 n.2 (10th Cir. 1990)

(citations omitted).

Petitioner argues that the "absence of on-point case law at the time [he] filed his initial

habeas petition plainly supplies an 'external impediment [that] prevented him from discovering

the grounds for relief he now raises or from including them in his earlier petition.'"  (ECF No. 26

at 2 (citing *Stanko*, 617 F.3d at 1272).)  Petitioner's argument is not persuasive for the following

reasons.

First, the absence of case law is not an "external impediment."  Cause, as an exception to

the abuse of the writ, requires "a reasonable and diligent" investigation to include all grounds for

relief in a first habeas petition if they are factually and legally *possible* to make at the time.  *See*

*Stanko*, 617 F.3d at 1272; *Rodriguez*, 948 F.2d at 687.  The Court agrees that at the time

Petitioner filed his First Petition, no decisions from other United States District Courts permitted

the claim Petitioner now pursues.  But, congruently, no United States District Court had denied

the relief Petitioner now seeks.  The lack of case law did not prevent Petitioner "from

constructing or raising the claim" himself.  *See Rodriguez*, 948 F.2d at 687.  The Tenth Circuit's

decision in *Rodriguez* is instructive on this issue.  In *Rodriguez*, the pro se petitioner claimed that

when he filed his first habeas petition, "he did not realize the legal significance" of the legal

errors that formed the basis of his later habeas petition.  *Rodriguez*, 948 F.2d at 687.  The Tenth

Circuit rejected Rodriguez's argument and held that "'cause' under [the] cause and prejudice test

must be something external to the petitioner, something that cannot fairly be attributed to him. . .

."  *Id*. (internal citations and quotations omitted).  Under the abuse of the writ doctrine, the Tenth

Circuit dismissed Rodriguez's second petition because the factual and legal bases for his new claims existed at the time he filed his first federal habeas petition and thus, it was possible for him to raise his new claims at the time of the earlier petition. *Id*. at 687-88.  In *Rodriguez*, the Tenth Circuit found the petitioner's "pro se status and his corresponding lack of awareness and training on legal issues do not constitute adequate cause for his failure to raise [his] new claims in his previous habeas petition." *Rodriguez*, 948 F.2d at 688 (citations omitted).  Similarly, the factual and legal bases for Petitioner's new claim in the Second Petition existed at the time Petitioner filed his First Petition.  Petitioner suggests as much when he argues that he "sought to raise the instant claim via his first habeas petition. . . ."  (ECF No. 26 at 3 n. 1.)  And similar to the petitioner's pro se status in *Rodriguez*, Petitioner's lack of legal training does not constitute cause.  In *McCleskey*, the Supreme Court stated "[i]f what petitioner knows or could discover upon reasonable investigation supports a claim for relief in a federal habeas petition, what he does not know is irrelevant." 499 U.S. at 498.  Thus, the fact that Petitioner did not know he may have a viable claim based upon the lack of pertinent case law is irrelevant to the issue. "Reasonable investigation" is not limited solely to pertinent case law.  Rather, it also includes the facts.  Thus, the absence of pertinent case law does not constitute "cause" to excuse Petitioner's failure to raise his claim in the First Petition because it was possible for him to make the claim he now raises.

Although the Tenth Circuit in *Rodriguez* reserved ruling on "whether a language barrier could render a petitioner so incapable as to constitute cause for failure to present all claims in [a] first federal habeas petition," 948 F.2d at 688, the Court does not find the facts in this matter support Petitioner's argument that his limited written English ability constitutes cause for his

failure to raise his claim in the First Petition.  Specifically, Petitioner successfully quoted, cited,

and argued Section 1226(c) in his First Petition.  (ECF No. 1 at 10, *Olmos v. Holder*, Case No.

13-CV-3158-RM-KMT, 2014 WL 222343 (D. Colo. Nov. 20, 2013).)  Thus, the Court rejects

Petitioner's limited written English ability constitutes cause for his failure to raise his claim in

the First Petition.

Second, the decision in *In re West* ("*West*"), 22 I. & N. Dec. 1405 (BIA 2000), existed at

the time Petitioner filed the First Petition.  In *West*, the BIA held that "'[r]eleased' in [the context

of the mandatory detention statute] can also refer to release from physical custody following

arrest. . . ." *Id*. at 1410.  Thus, similar to Petitioner's current claim, Petitioner could have

challenged his being subject to mandatory detention based upon the BIA's interpretation of the

mandatory detention statute at the time of his First Petition.  Petitioner's reliance (ECF No. 26 at

3-4) upon *Coleman v. Saffle*, 869 F.2d 1377, 1381-82 (10th Cir. 1989), in which the Tenth

Circuit found no abuse of the writ where the petitioner raised a new argument that "courts

repeatedly had rejected, often summarily," is misplaced.  In this matter, the district courts had

not yet reached a decision on whether Petitioner's claim is viable.  Therefore, *Coleman* is

distinguishable from this matter.  It was incumbent upon Petitioner to construct his claim that he

now raises.  *See Rodriguez*, 948 F.2d at 687.

Therefore, inexcusable neglect led to Petitioner's failure to include his new claim in the

First Petition.

2.     Denying Petitioner Review of His Claim Does Not Result in Manifest
        Injustice

The Tenth Circuit has held that an analysis of the interests of justice in cases of

procedural default is similar to reviewing for plain error.  *Morales-Fernandez, v. INS*, 418 F.3d

1116, 1122 (10th Cir. 2005). An error is plain if it is clear or obvious at the time of appeal. *Id.* at 1124 (citation omitted). With respect to the First Petition, the Tenth Circuit declined to consider whether it was "plain error" for the Court not to grant Petitioner's habeas petition because he was not incarcerated as part of a criminal sentence. *Olmos*, 780 F.3d at 1326-27. Rather, the Tenth Circuit, in dicta, reached the conclusion that "the outcome is uncertain" as to whether Petitioner's lack of incarceration as part of a criminal sentence necessarily dictates that he could not have been "released" within the mandatory detention statute's meaning. *Id.* Further, the Third Circuit Court of Appeals has rejected Petitioner's new claim. *See Sylvain v. Att'y Gen.*, 714 F.3d 150, 161 (3d Cir. 2013). Thus, it is not plain error or manifest injustice to deny review of Petitioner's Second Petition.

The Court recognizes that the "interests of justice" incorporates a number of factors, *Morales-Fernandez*, 418 F.3d at 1119-20, but in this matter, the Court finds that Petitioner did not comply with the requirement of raising all of his claims for relief in the First Petition; does not find his explanations sufficient (*i.e.*, that the lack of pertinent case law, his lack of English skills, and his pro se status impeded his ability to raise the claim) and does not find Petitioner's liberty interest outweighs the application of the abuse of the writ doctrine.

**B.    Alternatively, whether Certain of the BIA's Decisions are Entitled to *Chevron* Deference**

For the purpose of full analysis, the Court considers whether (as Respondents argue) to defer to the BIA decisions in *West*, 22 I. & N. Dec. 1405, 1410 (BIA 2000) and *In re Kotilar*, 24 I. & N. Dec. 124 (BIA 2007) ("*Kotilar*") under the two-part inquiry under *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984) ("*Chevron*"). For the following

reasons, the Court, as it applies to Petitioner's circumstances in this matter, defers to the BIA's

decisions in *West* as well as *Kotilar* and thus, dismisses Petitioner's Second Petition.

Under *Chevron*, the Court first determines "whether Congress has directly spoken" on the

issue. *Chevron*, 467 U.S. at 842; *Olmos*, 780 F.3d at 1317. "If Congress has directly spoken, we

do not accord any deference to the [BIA's] interpretation." *Olmos*, 780 F.3d at 1317 (citing

*Chevron*, 467 U.S. at 842-43). "But, if Congress has not directly spoken on the issue, [the Court]

must decide if the [BIA's] interpretation is permissible." *Id*. (citing *Chevron*, 467 U.S. at 843).

### 1.    Whether Congress Has Directly Spoken on the Issue

"To determine whether Congress has directly spoken, [the Court] consider[s] the

statutory text and other clues regarding Congress's meaning." *Id*. The text of the mandatory

detention statute, 8 U.S.C. § 1226(c), makes clear that the Attorney General must take custody of

certain aliens "*when . . . released*, without regard to whether the alien is released on parole,

supervised release, or probation, and without regard to whether the alien may be arrested or

imprisoned again for the same offense." (Emphasis added.)

Petitioner argues that "only a release from a post-conviction term of incarceration triggers

the statute. . . ." (ECF No. 1-1 at 9.) Respondents argue that the "Court should defer to the

BIA's permissible interpretation of the 'released' term in Section 1226(c) and permit mandatory

detention that follows release from pre-conviction physical custody." (ECF No. 25 at 16.) Both

interpretations are plausible because the statutory text is ambiguous in its reference to "when . . .

released." *See* 28 U.S.C. § 1226(c). As the Court demonstrated during the TRO hearing with its

multiple hypotheticals (Hearing Tr., 19:5-23, 20:8-13, 23:11-25, 24:1, 26:5-24, 27:13-20, 48:8-

25, 49:1-5) the phrase, "when released," may refer solely to aliens who are: (1) released from a

post-conviction term of incarceration; (2) released from pre-conviction physical custody; or (3) released into the community.  To interpret this phrase, the Court must go beyond the statutory text.

To interpret this phrase, the Court uses traditional tools of statutory construction.  The parties point to the following tools of statutory construction:  construing the term "released" consistently throughout the statute; reading the phrase "when . . . released" in the context of Section 1226 as a whole; and legislative purpose.  These tools do not remove the existing ambiguity in the statute, for none definitely answers which meaning of "when . . . released" applies.

   a.   *Construing the Term Consistently Throughout the Statute and Reading the Phrase in the Context of Section 1226 as a Whole*

Petitioner argues that the Court must construe the term, "released," consistently throughout the statute and read the phrase, "when . . . released" in the context of Section 1226 as a whole.  (ECF No. 1-1 at 10-11 (citing *Sorenson v. Sec. of Treas.*, 475 U.S. 851, 860 (1986) (holding that "[t]he normal rule of statutory construction assumes that identical words used in different parts of the same act are intended to have the same meaning") (citation and internal quotation marks omitted); *Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc.*, 764 F.3d 1199, 1230-31 (10th Cir. 2014); *West*, 22 I. & N. Dec. at 1408-09 (holding that the phrase refers to "the release of an alien from a restrictive form of criminal custody involving physical restraint")).  The Court agrees with these canons of statutory interpretation but finds that these tools do not remove the ambiguity.  Specifically, in Section 1226(c)(1), Congress used language identifying that the Attorney General shall take into custody any alien "when the alien is released."  But in Section 1226(c)(2), Congress used language identifying that the "Attorney

General may release an alien . . . if the Attorney General decides . . . that release of the alien *from custody* is necessary. . . ." (Emphasis added.) Thus, the Court finds that Congress knew how to distinguish between "release" of alien "from custody" and "release" in general.

Section 1226(c)(1) states that the Attorney General shall take into custody any alien "when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation." 8 U.S.C. § 1226(c)(1). Petitioner argues, and the Court agrees, that the term "released" must be given the same meaning in both clauses of the sentence. *See Ratzlaf v. United States*, 510 U.S. 135, 143 (1994) (noting that a statutory term appearing in several places in a statutory text is generally read to have the same meaning each time it appears) (citation omitted). A sentence of probation does not require any prior custodial confinement. The phrases, "released on parole" or "supervised release" can only occur subsequent to a conviction. But release on supervised release does not, as Petitioner contends, necessarily require that an individual be "released" from post-conviction *incarceration*. *See United States v. Elliot*, 971 F.2d 620, 622 (10th Cir. 1992) (holding that a sentence of zero month imprisonment followed by supervised release is permissible and does not constitute a sentence of only "probation").

The Court does not read *West* as broadly as Petitioner. In *West*, the BIA determined that "release of an alien from a restrictive form of criminal custody involv[e]s physical restraint" rather than a release from non-physical custody. *West*, 22 I. & N. Dec. at 1408-10. But *West* did not hold that this restraint must take the form of post-conviction incarceration. *See generally West*, 22 I. & N. Dec. at 1408-10.

b.      *Legislative Purpose*

Petitioner argues that his construction of the mandatory detention statute, that it only

applies to an individual who is released following a term of post-conviction incarceration, is

consistent with its purpose, *i.e.*, the statute is designed "to prevent the flight risk and danger

posed by a limited class of noncitizens with criminal convictions."  (ECF No. 1-1 at 13 (citing

*Demore v. Kim*, 538 U.S. 510, 527-28 (2003)).)  Respondents agree, in part, with Petitioner's

interpretation of Congressional intent.  Respondents argue, however, that "Congress intended

Section 1226(c) to prohibit the release of aliens who are removable based on their *criminal*

*conduct*, not based on the sentences they received."  (ECF No. 25 at 20 (emphasis added).)

The Court agrees with Respondent's interpretation.  *See Demore*, 538 U.S. at 525 n.9

(stating that the alien's had undertaken committing "crimes that subject them to detention in the

first instance"); *Sylvain*, 714 F.3d at 160 (holding that "[d]eportable aliens are ineligible for

release as long as they have committed a crime listed in [Section] 1226(c)(1), which serves as a

proxy for flight risk and danger").

The principle of *expressio unius est exclusion alterius* supports the Court's interpretation

of Congressional intent.  *See Russello v. United States*, 464 U.S. 16, 23 (1983) (citations omitted)

(holding that "[w]here Congress includes particular language in one section of a statute but omits

it in another section of the same [a]ct, it is generally presumed that Congress acts intentionally

and purposely in the disparate inclusion or exclusion").  Section 1226(c)(1)(A) applies

mandatory detention to aliens inadmissible under 8 U.S.C. § 1182(a)(2).  Under Section

1182(a)(2), an alien who has committed "only one crime" involving moral turpitude must have

been sentenced to at least six months of incarceration with "the maximum penalty possible for

17

the crime of which the alien was convicted (or which the alien admits having committed or of which the acts that the alien admits having committed constituted the essential elements) did not exceed imprisonment for one year," to become inadmissible.  8 U.S.C. § 1182(a)(2)(A)(ii)(II). Section 1182(a)(2), however, does not include a sentencing minimum for an alien such as Petitioner who is inadmissible because of *multiple* convictions for crimes involving moral turpitude.  Petitioner's two crimes involving moral turpitude make him inadmissible regardless of the length of his sentence.  Further, Section 1226(c)(1)(B) requires the Attorney General to take into custody an alien who is deportable because he committed an offense involving multiple criminal convictions, aggravated felonies, controlled substances, firearms, or certain other offenses without consideration of the sentence such alien received.  *See* 8 U.S.C. § 1226(c)(1)(B); 8 U.S.C. § 1227(a)(2)(A)(ii), (A)(iii), (B)-(D).  In contrast, Section 1226(c)(1)(C) applies mandatory detention to an alien who is deportable because he has committed a crime and for which he has been sentenced to a term of imprisonment of at least one year.  8 U.S.C. § 1226(c)(1)(C).

If Congress had intended to require a term of incarceration subsequent to conviction to apply to Petitioner, it knew how to include such a provision.  Congress did not include such a provision.

### 2.   Whether BIA's Interpretation is Permissible

The BIA has twice visited the matter of what constitutes "released" within the meaning of the mandatory detention statute.  The BIA has held that "release" does not require a term of incarceration subsequent to conviction for a removable offense.  *See Kotilar*, 24 I. & N. Dec. at

125-26; *see also West*, 22 I. & N. Dec. at 1410.  The Court finds BIA's interpretation

permissible[2] and thus, defers to the BIA in accordance with *Chevron*.

In *West*, the BIA held that the alien was not "released" within the meaning of Section

1226(c) because his "release" occurred prior to the effective date of the mandatory detention

statute.  22 I. & N. Dec. at 1406, 1410.  In *West*, the alien was indicted and, after posting bond,

was released from state custody.  22 I. & N. Dec. at 1406.  Subsequently, in *West*, the alien pled

guilty to the charges and sentenced to probation.  22 I. & N. Dec. at 1406.  In *West*, BIA found

that "released" "*can* also refer to release from physical custody following arrest. . . ."  22 I. & N.

Dec. at 1410 (emphasis added).

In *Kotilar*, the alien contended that he was not subject to mandatory detention because he

did not serve a jail term and was apprehended from his home while on probation.  24 I. & N.

Dec. at 125.  In *Kotilar*, the alien was "released from criminal custody" following the mandatory

detention statute's taking effect.  24 I. & N. Dec. at 125-26.  The BIA found the alien subject to

the mandatory detention statute.  24 I. & N. Dec. at 126.

Petitioner argues that the BIA's interpretation is unreasonable and that for an individual

to be "released," he must be:  "(1) convicted of an offense enumerated in Section 1226(c)(1), (2)

serve a prison sentence for such a conviction, and thereafter (3) be released to DHS."  (ECF No.

1-1 at 13 (quoting with alterations *Straker v. Jones*, 986 F. Supp. 2d 345, 357 (S.D.N.Y. 2013)

and citing *Masih v. Aviles*, Case No. 14 Civ. 0928 (JCF), 2014 WL 2106497, at *2-4 (S.D.N.Y.

May 20, 2014); *Martinez-Done v. McConnell*, 56 F. Supp. 3d 535, 541-44 (S.D.N.Y. 2014)).)

---

[2] The Court has concerns with the BIA's interpretation of "release" in *West*.  22 I. & N. Dec. at 1410.  Necessarily, for an individual to have "committed" an offense; "committed" requires a conviction or a guilty plea.  8 U.S.C. § 1226(c)(1).  Thus, the BIA's interpretation of "release" in *West* makes sense only when considered in light of the alien's subsequent guilty plea following the prior "release" from state custody.

The Court finds Petitioner's reliance on cases from the United States District Court for the Southern District of New York not persuasive for the following reasons.  First, the cases from the Southern District of New York are not binding precedent on the Court.  Second, the Court finds that the Southern District of New York cases utilized a "time-limiting construction" of the mandatory detention statute which the Tenth Circuit has rejected, *Olmos*, 780 F.3d at 1324-26.  *Lora v. Shanahan*, 15 F. Supp. 3d 478, 487 (S.D.N.Y. 2014); *see Straker*, 986 F. Supp. 2d at 356, 358 ("A construction of 'released' under which a mere arrest for a qualifying offense under § 1226(c)(1)(B) triggers DHS's mandatory duty to detain an alien would create other discord with the statutory framework.  *Upon such an arrest*, DHS would be *obliged* to place the alien in immigration detention, despite the ongoing criminal proceedings.") (Emphasis added.)  Third, the Southern District of New York cases read into the statute a requirement for mandatory detention that is plainly not in the statute:  that the individual "serves a prison sentence for such a conviction."  *Straker*, 986 F. Supp. 2d at 357; *accord Masih*, 2014 WL 2106497 at *3; *accord Lora*, 15 F. Supp. 3d at 492-93.

To be clear, during the hearing on the Petitioner's motion for a TRO, the Court demonstrated difficulties with the BIA's interpretation of "released."  (Hearing Tr., 19:5-23, 20:8-13, 23:11-25, 24:1, 26:5-24, 27:13-20, 48:8-25, 49:1-5.)  Thus, mere deference to the BIA's interpretation of "released" has problems.  But the Court finds that the BIA's interpretation of "released," as it applies to Petitioner in this matter, neither "arbitrary, capricious, [n]or manifestly contrary to the statute."  *See Herrera-Castillo v. Holder*, 573 F.3d 1004, 1007 (10th Cir. 2009) (citation omitted).  Petitioner was in criminal custody (ECF No. 1-3, Olmos Decl. ¶ 7), was released (ECF No. 1-5 at 6, 11, Azhar Decl., Exs. B, D), and experienced a criminal

conviction (ECF No. 1-5 at 13-15, Azhar Decl., Ex. E.; ECF No. 1-5 at 17-18, Azhar Decl., Ex. F.). Thus, Petitioner is subject to the mandatory detention statute in accordance with *West* and *Kotilar's* holdings.

>    **C.**    **Because the Court Has Found Problems with Mere Deference to the BIA's Interpretation of "Released," the Court Articulates its Independent Interpretation of the Mandatory Detention Statute**

The Court has concerns with mere deference to the BIA's interpretation of released. (Hearing Tr., 19:5-23, 20:8-13, 23:11-25, 24:1, 26:5-24, 27:13-20, 48:8-25, 49:1-5.)  Scenarios similar to the length of a zero month sentence imposed as in *Elliot*, 971 F.2d at 622, and individuals without a physical arrest, *i.e.*, the individual appeared via a court issued summons, demonstrate the untenable nature of the BIA's interpretation of "released" in every situation. Further, the Court has concerns that individuals would be treated differently under the mandatory detention statute simply due to the caprice of officers, prosecutors, or judges who decide whether to or whether not to arrest an individual,[3] a decision most often made without a thought as to the deportability issue.  Therefore, the Court addresses the narrow question of whether Petitioner's sentence to probation subsequent to a conviction for a crime of moral turpitude subjects him to the mandatory detention statute in the absence of *Chevron* deference.  The Court answers this question in the affirmative for the following reasons.

Nothing in the mandatory detention statute prohibits this interpretation.  *See generally* 8 U.S.C. § 1226(c).   The mandatory detention statute does not say that the individual must be released from some form of physical custody.  As the Court pointed out during the hearing on

---

[3] In *Olmos*, the Tenth Circuit noted that "[t]he parties apparently agree that physical custody is required to trigger § 1226(c):  Otherwise, how could the alien be 'released'?"  780 F.3d at 1323 n.4.  The Court notes that not all individuals need be in physical custody prior to conviction for a criminal offense.

Petitioner's motion for a TRO, an individual can be released from supervision, detention authorities' control, or a court's inherent control over defendants who appear before them.

To the Court, the only interpretation of "released" within the meaning of the mandatory detention statute that is coherent and avoids a host of real world irrational outcomes is the following: "released" refers to post-sentencing release into the community. *See Desrosiers v. Hendricks*, 532 F. App'x 283, 286 (3d Cir. 2013) (unpublished) (citing *Hensley v. Mun. Ct.*, 411 U.S. 345, 351 (1973)). If an individual who is subject to the mandatory detention statute is released into the community, then because Congress has declared such an individual a flight risk or a danger, the Attorney General may take that alien into custody. It does not matter whether the entity that releases the alien into the community is a court, a police department, or a jail. And it does not matter whether the individual is released into the community in order to serve his sentence (probation), as a stage of an otherwise incarcerative sentence (work release or transitioning to a halfway house or home confinement at the tail end of a federal sentence), or upon completion of a sentence of incarceration (parole). If the alien is in the community, the Attorney General is authorized to take him into custody and hold him.

Because Petitioner was released into the community subsequent to his guilty plea and sentencing for crimes of moral turpitude (ECF No. 1-5 at 13-15, Azhar Decl., Ex. E.; ECF No. 1-5 at 17-18, Azhar Decl., Ex. F.), he is subject to the mandatory detention statute.

IV.   **CONCLUSION**

Based on the foregoing, the Court:

(1)      DENIES and DISMISSES Petitioner's Second Petition (ECF No. 1).

DATED this 18th day of August, 2015.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge